STACY JOY,

Plaintiff,

VERSUS

KINPLEX CORPORATION,

Defendant.

_____

MEMORANDUM AND ORDER
May 6, 2008

_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Stacy Joy (hereinafter, "plaintiff" or "Joy") brings this action alleging employment discrimination on the basis of her pregnancy, in violation of the Pregnancy Discrimination Act ("PDA") pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e(k) *et seq.* ("Title VII"), against Kinplex Corporation (hereinafter, "defendant" or "Company").[1] Plaintiff, who was a receptionist at Kinplex Corporation, asserts that defendant terminated her employment while she was on maternity leave as a result of her pregnancy. Defendant now moves for summary judgment. For the following reasons, defendant's motion for summary judgment is denied.

I. BACKGROUND

A. The Facts

The facts described below are taken from the parties' depositions, affidavits, exhibits and the parties' Local Rule 56.1 statement of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 54-55 (2d Cir. 2005).

---

[1] Plaintiff also asserted a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). However, the parties stipulated to the withdrawal of that claim, and the Court "So Ordered" the stipulation on June 16, 2006. (*See* June 16, 2008 Order.)

1. Plaintiff's Pregnancy

Defendant is a business located in Edgewood, New York, that manufactures stainless steel commercial kitchen sinks and tables. (Def.'s 56.1 ¶ 1.)[2] Plaintiff was employed as a receptionist by defendant. (*Id.* ¶ 2.) The job requirements of a receptionist include answering phones, opening mail, sorting through faxes, meeting and greeting office guests, sending out literature, and data entry. (*Id.* ¶ 3.)

During employment, plaintiff learned that she was pregnant. (*Id.* ¶ 7.) Plaintiff notified Margaret Ramsey, the Office Manager, and Heidi McGarvey, the Bookkeeper, of her pregnancy sometime between December 2003 to January 2004. (Pl.'s Aff. ¶ 7.) Ramsey was plaintiff's immediate supervisor. (*Id.*)

Plaintiff began experiencing pre-term labor and high blood pressure during her pregnancy, and contends that her doctor advised her that it would be in plaintiff and the baby's best interest to discontinue working until after the baby was born. (*Id.* ¶ 9.) On June 4, 2004, plaintiff provided defendant with a handwritten note from her doctor (hereinafter, the "Doctor's Note").[3] (Def.'s 56.1 ¶ 9.) Defendant contends that the Doctor's Note advised that plaintiff stop working until further notice. (McGarvey Dep. 44; Pl.'s Dep. 62-64; Doctor's Note, dated June 4, 2004, Def.'s Exh. C.) Plaintiff disputes that interpretation of the Doctor's Note, and argues that she notified Ramsey and McGarvey in person on June 4, 2004 that she would need to go out on disability leave due to her condition and would return six weeks after the baby was born. (Pl.'s Aff. ¶ 10.) Plaintiff further argues that her discussion with her supervisors was consistent with what she believed defendant's maternity leave policy to be. (*Id.*)

2. The Employee Handbook

Defendant contends that, upon hire, plaintiff signed for and received a copy of the defendant's Employee Handbook (hereinafter, the "Handbook") on November 7, 2000. (Def.'s 56.1 ¶ 4; *see* Handbook, Def.'s Exh. E.) Plaintiff disputes this, and points to her deposition wherein she does not remember signing it. (Pl.'s Dep. 104-05.) The document was signed on November 7, 2000. (*See* Handbook, Def.'s Exh. E.)

The Handbook contained a paragraph entitled "Maternity Leave." Kinplex's maternity leave policy stated:

> The Company will adhere to the New York State Disability Benefits policy in regard to Maternity Leave.
>
> Today, the benefits are as follows:

---

[2] Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact or has offered no evidence to controvert that fact.

[3] The Doctor's Note reads as follows:

> To whom it may concern
>
> Re: Joy Stacey
>
> The above patient [sic] under our OBGYN care. She has already [sic] 28 weeks pregnant. She is not able to work til [sic] second notice. If you have any problem please call us. Thank you.

(Doctor Note, Def.'s Exh. C.)

2

A. 50% of weekly wages subject to a maximum of $170.00 per week.

B. Benefits can start 2 - 4 weeks prior to birth and cease 6 - 8 weeks after birth:
    1. 6 weeks normal delivery
    2. 8 weeks by caesarean

C. Where applicable, the Company's Insurance Policy will also be in effect.

(Handbook, Def.'s Exh. E.) Maternity leave is not discussed anywhere else in the Handbook. Defendant contends that the policy only discussed benefits to which pregnant employees were entitled, and not maternity leave. (Def.'s 56.1 ¶ 5; Pl.'s Dep. 108.) Plaintiff disputes this and argues that plaintiff was entitled to maternity leave for six weeks for a normal delivery and eight weeks after a caesarean delivery according to the plain language of the "Maternity Leave" policy. (Pl.'s 56.1 ¶ 5; Pl.'s Aff. ¶¶ 10-12.)

### 3. Plaintiff's Leave of Absence and Communications with Kinplex

Pursuant to the Doctor's Note, plaintiff took a leave of absence on June 4, 2004. (Def.'s 56.1 ¶ 9.) Defendant did not object to plaintiff's request for leave. (*Id.* ¶ 10.) Specifically, according to plaintiff, Ms. Ramsey told her not to worry about taking leave in accordance with the Doctor's Note. (Pl.'s Aff. ¶ 13.) Plaintiff alleged that Ms. Ramsey asked plaintiff if she was sure about coming back to work and plaintiff responded, "Absolutely. I have to." (*Id.*) Ms. Ramsey advised plaintiff to give the note to Ms. McGarvey. (*Id.*) Plaintiff told Ms. McGarvey that she would be back to work six weeks after the baby was born. (*Id.*) Ms. McGarvey advised plaintiff that it was not a problem and that she was entitled to up to eight weeks of leave following the birth of the baby. (*Id.*) Plaintiff testified throughout her deposition as to this conversation. (Pl.'s Dep. 27-29, 36-37, 66, 82, 90.)

Plaintiff also testified that Ms. McGarvey gave plaintiff disability forms to complete,[4] and advised plaintiff that the six to eight week period allowed under the policy was not impacted by the time that plaintiff took off before the birth. (Pl.'s Aff. ¶ 14; Pl.'s Dep. 83-85.) Plaintiff brought back the completed paperwork on June 7, 2004. (Pl.'s Aff. ¶ 15; Pl.'s Exh. 3.) Ms. McGarvey advised plaintiff that the paperwork looked in order and she would receive a check in a few weeks. (*Id.*)

Defendant argues that, while on leave, plaintiff did not contact defendant to inform the Company if and when she was going to return to her job. (Cooper Dep. 75-76.) Specifically, in defendant's letter response to plaintiff's NYS Division of Human Rights complaint, dated November 2, 2004, defendant argues that there was no official communication or contact between plaintiff and Kinplex between June 4, 2004 and August 20, 2004. (Pl.'s Exh. 6.) Defendant argues that the only contact between plaintiff and Kinplex occurred on August 20, 2004 between Heidi McGarvey and plaintiff. (*Id.*)

However, plaintiff disputes these facts and testified that she consistently remained in touch with the defendant. (Pl.'s Aff. ¶¶ 16, 23.) Specifically, she provides evidence that during the Summer 2004, she submitted

---

[4] Plaintiff applied for New York State Disability Benefits through First Rehabilitation Life Insurance Company. (McGarvey Dep. 45, 48, 54-55.) The maximum disability benefit was six months. (*Id.*; *see also* Pl.'s 56.1 ¶ 38.)

3

supplementary reports to First Rehabilitation Life Insurance Company, which indicated a projected return to work date. (Pl.'s Exh. 4.) She also argues that she communicated with Ms. Ramsey, Ms. McGarvey and other employees throughout that time. (Pl.'s Aff. ¶ 16.) For example, plaintiff stated that: (1) on June 30, 2004, she called Ms. McGarvey to see if the disability paperwork was processed and Ms. McGarvey responded that everything was good (Pl.'s Dep. 152); (2) on July 29, 2004, plaintiff called defendant to let Ms. McGarvey and Ms. Ramsey know that her due date was about three weeks away and informed them that she could be back six weeks after the baby was born (Pl.'s Aff. ¶ 18); and (3) on August 15, 2004 plaintiff called defendant to inform Ms. McGarvey and Ms. Ramsey that she was due to go to the hospital in four days for a caesarean section which, under the defendant's maternity leave policy, would change the return date to eight weeks after the baby was born (Pl.'s Aff. ¶ 19). Moreover, plaintiff provides notes kept by Ms. McGarvey which corroborated these conversations. (*See* Pl.'s Exh. 5.)

Plaintiff gave birth on August 20, 2004. (Def.'s 56.1 ¶ 15.) According to plaintiff, plaintiff spoke with Ms. McGarvey on August 21, 2004, to provide her son's name for insurance purposes. (Pl.'s Aff. ¶ 20.) Ms. McGarvey told plaintiff that the health coverage was changing effective September 1, 2004, so that additional paperwork needed to be completed. (*Id.*) Moreover, plaintiff asserts that, on August 23, 2004, she called Ms. McGarvey to make sure that Ms. McGarvey had plaintiff's son's name correct on such paperwork – Frances Xavier Joy Theroux (Ms. McGarvey had left out "Joy"). (*Id.* ¶ 21.) Plaintiff also wanted to make sure Ms. McGarvey had all of the necessary paperwork for the health coverage transfer, and Ms. McGarvey advised plaintiff that she had received everything. (*Id.*) On August 27, 2004, plaintiff received a fruit basket delivered to her home from Ms. McGarvey and Ms. Ramsey to congratulate her on her son's arrival. (*Id.* ¶ 22.) The card on the basket indicated "See you soon." (*Id.*) Plaintiff called to say "thank you" and advised that she would be back in seven weeks. (*Id.*)

4. Plaintiff's Termination

Defendant sent plaintiff a letter on September 10, 2004 (received September 11, 2004) notifying plaintiff of her termination.[5] (Pl.'s Aff. ¶ 29; *see also* Def.'s Exh. D.) The letter stated that defendant had endured an undue hardship due to plaintiff's absence. (*Id.*) Plaintiff contends that this was the first time anyone had indicated that her absence was creating a hardship. (Pl.'s Aff. ¶ 29.) Defendant also advised that it had already hired someone to replace her. (*Id.*)

Defendant contends that, during plaintiff's absence, her job duties were performed by various other employees in the customer service department who were required to take on plaintiff's duties in addition to their own regular work responsibilities. (Cooper Dep. 32-33.) Defendant further contends that her absence created an undue hardship on defendant to continue to keep her job open. (McGarvey Dep. 93-94.) Plaintiff disputes defendant's contentions and argues that at no time did anyone tell her that her job was in jeopardy or that her absence was creating a hardship. (Pl.'s Aff. ¶ 24.)

---

[5] The termination letter was signed by Craig Cooper. Plaintiff indicates that Craig Cooper, defendant's Office Manager/National Sales Manger, replaced Ms. Ramsey as Office Manager. (Pl.'s Aff. ¶ 31.)

4

Moreover, as of September 10, 2004, plaintiff's date of termination, plaintiff had been on leave for fourteen (14) weeks. (Def.'s 56.1 ¶ 19.) Defendant argues that this was beyond the twelve (12) week total allowance under Company policy. Plaintiff disputes this and argues that she was entitled to 6-8 weeks leave after her pregnancy (regardless of any disability leave prior to the birth), as stated in the Maternity Leave policy and as discussed with her supervisors throughout this entire time.

### B. Procedural History

Plaintiff filed a complaint of discrimination with the New York State Division of Human Rights (NYSDHR) and the Equal Employment Opportunity Commission (EEOC) on October 15, 2004, alleging that the defendant discriminated against her based upon her pregnancy. On February 16, 2006, the EEOC issued a "Right to Sue" letter.

Plaintiff filed a complaint in this action on May 1, 2006, alleging employment discrimination under Title VII on the basis of her pregnancy. On January 4, 2008, defendant filed a motion for summary judgment. Plaintiff filed her opposition on March 5, 2008. Defendant filed a reply on March 14, 2008. Oral argument was held on May 2, 2008. The Court has considered all of the parties' submissions.

## II. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set

forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g. Gallo v. Prudential Residential Servs*., 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp*., 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. LEGAL STANDARD FOR DISCRIMINATION CASES

Plaintiff brought this act against Kinplex for allegedly discriminating against her on the basis of pregnancy in violation of the PDA. The PDA provides that

> women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise.

42 U.S.C. 2000e(k).

Because plaintiff presents no direct evidence of discriminatory treatment based on her gender, the Court reviews her claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of pregnancy discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802))). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y.*, Inc., 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see Lapsley v. Columbia Univ.*, 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of McDonnell Douglas test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

IV. PREGNANCY DISCRIMINATION CLAIM

At the outset, the Court finds that plaintiff has made out the *prima facie* case required by *McDonnell Douglas,* based upon, as discussed more fully below in connection with prong three, plaintiff's membership in the protected class, as well as evidence relating to the circumstances surrounding the plaintiff's termination, her leave of absence, and the defendant's maternity leave policy. In response, defendant has established legitimate, non-discriminatory reasons for terminating plaintiff. Specifically, defendant argues that plaintiff was terminated because of her extended leave of fourteen weeks. Moreover, defendant argues that plaintiff's continued absence and uncertain status, paired with defendant's efforts to hold her position open beyond twelve (12) weeks, created an undue hardship for defendant. Hence, the

Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find pregnancy discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y.), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley*, 999 F. Supp. at 515.

In response to defendant's motion for summary judgment, plaintiff points to several pieces of evidence in support of her argument that a reasonable jury could find that defendant's proffered non-discriminatory reasons for the termination were a pretext for pregnancy discrimination. First, plaintiff argues that she was terminated prematurely because the Company's maternity leave policy entitled her to 6-8 weeks leave after having the baby. Specifically, she provides evidence that she filed proper disability leave paperwork prior to her pregnancy due to pregnancy complications, and that defendant assured her that her medical leave of absence would not interfere with her 6-8 weeks maternity leave after the baby was born. Second, plaintiff argues that she was in contact with defendant throughout her leave of absence, and alerted defendant that she would be returning to work within eight weeks of her caesarean section. Moreover, plaintiff contends that she was never alerted as to any hardships resulting from her absence.

Defendant first argues that the "Maternity Leave" policy in the Handbook, although "inartfully labeled," does not address the terms of maternity leave, but rather the payment of benefits to employees who are on maternity leave, and that plaintiff exceeded the Company's maximum period of twelve weeks maternity leave. Second, defendant argues that, even if the Handbook policy addressed the terms of maternity leave, plaintiff's own admission that she exceeded twelve weeks places her outside the total allotted time of that policy.

The Court recognizes that the fact that an employee disagrees with an employer's reasons for termination, or even has evidence that the decision was objectively incorrect, does not demonstrate, by itself, that the employer's proffered reasons are a pretext for termination. *See, e.g., Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 761 (8th Cir. 1998) (stating that "the relevant inquiry was whether [plaintiff] created a genuine issue of material fact as to whether her discharge was gender-based and not whether her termination was reasonable" and noting that "[i]t is not the task of this court to determine whether [the investigator's] investigation was sufficiently thorough or fair"). However, having carefully examined the evidence contained in the record, the Court concludes that, when viewed as a whole and in the light most favorable to plaintiff, the evidence creates genuine issues of material fact as to whether defendant's stated reasons for terminating plaintiff were pretextual, and whether pregnancy was a factor in the termination decision.

At the outset, the Court concludes that there are clear issues of fact with respect to the defendant's Maternity Leave policy. Although defendant contends that the policy addresses *benefits* to those on maternity leave, not the actual leave itself, a reasonable jury could find that plaintiff was entitled to eight weeks leave after her pregnancy based on the language of the policy, in conjunction with

plaintiff's subsequent conversations with a variety of supervisors at the Company – namely, that her 6-8 week leave after having the baby would not be impacted by her medical leave prior to having the baby. Moreover, even though defendant argues that there was an overall policy of 12 weeks, defendant has not evidenced any documentation of such a policy. To the extent defendant relies on Cooper's testimony that such a policy existed, the Court notes that plaintiff disputes that she was ever made aware of that policy, and her evidence regarding conversations with her supervisors about her leave contradicts defendant's arguments that such a policy existed. Taking the evidence in a light most favorable to the plaintiff, the Court concludes that material issues of fact exist as to defendant's maternity leave policy.

Moreover, if the jury found no such maximum twelve week policy existed, they could infer that plaintiff's termination was the result of her pregnancy. This is especially so given the circumstantial evidence relating to the timing of her termination, along with defendant's admission that plaintiff's absence – related to the pregnancy – was the basis of such termination.[6] *See, e.g., Kerzer v. Kingly Mfg.*, 156 F.3d 396, 403 (2d Cir. 1998) (concluding that plaintiff has raised a genuine issue of material fact as to whether defendant terminated plaintiff because she became pregnant and took maternity leave); *Kucharski v. Cort Furniture Rental*, No. 06 CV 358 (WWE), 2007 WL 4944738, at *3 (D. Conn. Dec. 21, 2007) (finding issues of fact for the jury where plaintiff has adduced some evidence that defendant could have covered plaintiff's position during the period of time in which plaintiff was unable to work).

Defendant also argues that plaintiff was terminated because she did not contact defendant while she was on leave and her return date was uncertain – thus, defendant concluded that plaintiff abandoned her job. As discussed in-depth in the "Facts" section, *supra*, and taking the evidence in a light most favorable to the plaintiff, the Court finds that material issues of fact also exist on that issue and a reasonable jury could find otherwise – especially given plaintiff's claimed conversations with supervisors and the fact that she was fired approximately three weeks after having the baby.

Finally, there are disputed issues of fact related to the nature and extent of any hardship to the defendant from plaintiff's absence for several additional weeks after the birth. In particular, plaintiff stated, despite numerous conversations with representatives of the defendant both before and after the birth of her child, that she was never asked to return any earlier because of the hardship allegedly caused by her absence. Drawing all reasonable inferences in plaintiff's favor, in the context of the entire record, a reasonable

---

[6] Defendant also contends that at no point did co-workers or supervisors make any derogatory comments to her about her pregnancy – rather, they were genuinely excited. (*See* Def.'s Mem., at 7.) However, those facts if true would go towards the weight of the evidence, not whether issues of fact exist for a jury. As discussed above, the hardships that defendant complains about were allegedly the result of plaintiff's maternity leave, and plaintiff has proffered enough evidence for a reasonable jury to infer that her termination was because of her pregnancy. For the same reasons, defendant's arguments that other women were allowed maternity leave are similarly unavailing as a basis for granting summary judgment in light of the evidence plaintiff has adduced in support of her claim in her particular situation.

jury could conclude that the "undue hardship" justification was pretextual.

In sum, although defendant has pointed to portions of the record that undermine the strength of various aspects of plaintiff's proffered evidence of discrimination as it relates to her termination, the evidence is sufficient for plaintiff to survive defendant's summary judgment motion.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is denied.


SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 6, 2008
Central Islip, New York

\* \* \*

The attorney for plaintiff is Alan E. Wolin, Esq., of Wolin & Wolin, 420 Jericho Turnpike, Suite 215, Jericho, New York 11753. The attorneys for the defendant are Keith Gutstein, Esq. and Jeffery A. Meyer, Esq., of Kaufman Dolowich & Voluck LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York 11797.